UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 291, and THE TRUSTEES OF THE EIGHTH DISTRICT ELECTRICAL PENSION AND BENEFIT FUNDS, <br><br> Plaintiffs, <br><br> v. <br><br> ALLOWAY ELECTRIC CO., INC., an Idaho corporation, <br><br> Defendant. | Case No. 1-13-cv-00164-CWD <br><br> **MEMORANDUM DECISION** |

**INTRODUCTION**

This matter is before the Court on the parties' cross motions for summary

judgment. (Dkt. 14, 16.) Plaintiffs International Brotherhood of Electrical Workers Local

291 and The Trustees of the Eighth District Electrical Pension and Benefit Funds

(collectively, the Union) seek judicial confirmation of an arbitration award dated

December 12, 2012, involving a dispute between the Union and Defendant Alloway

**MEMORANDUM DECISION AND ORDER - 1**

Electric Co., Inc. (Alloway) over an alleged violation of a Collective Bargaining Agreement (CBA). The total award sought to be confirmed is $42,819.91. Alloway contests the award, arguing the Court should set it aside.

The Court conducted a hearing on July 7, 2014, at which the parties appeared and presented oral argument. After careful consideration of the parties' briefs, their arguments, and the relevant legal authorities, the Court enters the following order granting in part and denying in part both Plaintiffs' and Defendant's motions for summary judgment.

## FACTS

The Union and Alloway are parties to a CBA that sets forth procedures to settle grievances arising between the Union, employers, and Union members. The CBA, entitled the Inside Wireman Agreement, (Dkt. 14-6 at 1), bound Alloway by virtue of its Letter of Assent. (Dkt. 14-5 at 1.) The Letter of Assent designated the Idaho Chapter of the National Electrical Contractors Association—Western Division (NECA) as Alloway's collective bargaining representative for all matters pertaining to the CBA.

According to the grievances section in the CBA, disputes between labor and management would be resolved as follows:

> **Section 1.05**. There shall be a Labor-Management Committee of three representing the Union and three representing the Employers. It shall meet regularly at such stated times as it may decide. However, it shall also meet within 48 hours when notice is given by either party. It shall select its own Chairman and Secretary. The Local Union shall select the Union representatives and the Chapter shall select the management representatives.

**Section 1.06**. All grievances or questions in dispute shall be adjusted by the duly authorized representative of each of the parties to this Agreement. In the event that these two are unable to adjust any matter within 48 hours, they shall refer the same to the Labor-Management Committee.

**Section 1.07**. All matters coming before the Labor-Management Committee shall be decided by a majority vote. Four members of the Committee, two from each of the parties hereto, shall be a quorum for the transaction of business, but each party shall have the right to cast the full vote of its membership and it shall be counted as though all were present and voting.

**Section 1.08**. Should the Labor-Management Committee fail to agree or to adjust any matter, such shall then be referred to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication. The Council's decisions shall be final and binding.

The CBA required Alloway to maintain a prescribed ratio of higher compensated journeyman wiremen to lower compensated electrician apprentices. Specifically, the CBA required that "each job site shall be allowed a ratio of two (2) apprentices for every three (3) Journeyman Wireman….A job site is considered to be the physical location where employees report for their work assignments. The employer's shop (service center) is considered to be a separate, single job site. All other physical locations where workers report for work are each considered to be a single, separate job site." CBA Section 5.12 (Dkt. 14-6 at 23).

On December 16, 2011, the CBA was amended. Addendum (Dkt. 14-7 at 1). The ratio requirement was amended to require "Three (3) Journeymen to Two (2) Apprentice,

CW, CE.[1] Contractor using this amendment shall maintain an Apprentice (Indentured) ratio of Five (5) Journeymen to One (1) Apprentice (Indentured) ratio shop wide." But, the terms of the Addendum allowed the Business Manager discretion to consider a variance to the ratio requirement "to enhance the competitive position of the parties" to the Addendum.

Marc Bernsen is the Executive Director of NECA. In that capacity, Bernsen received a letter dated December 3, 2012, from Aaron White, the Union's business manager, requesting a meeting of the Labor Management Committee (LMC) regarding Alloway's alleged violation of the Addendum of the CBA. (Dkt. 14-11, 14-12). Attached to the letter was Alloway's current roster of Journeyman Wireman and Apprentices. Bernsen confirms receiving the letter. Bernsen Decl. ¶ 6 (Dkt. 14-4).

Bernsen later informed Mr. Miles Elletson, Vice President of Alloway, of the grievance and the upcoming LMC meeting by telephone. Bernsen does not know the exact date or time of the call, but believes it occurred sometime between December 3, 2012, and December 10, 2012. Elletson informed Bernsen that Alloway would not be sending its own representative to the LMC meeting, but would permit its NECA representatives to advocate for Alloway. Elletson Aff. ¶ 21 (Dkt. 15-2). Elletson asserts that Bernsen did not inform him of the ratio violation grievance, but only spoke to him

---

[1] CW is shorthand for construction wireman, while CE is shorthand for construction electrician. Construction Electricians are workers who have a journeyman licenses with the State of Idaho, but have not completed testing required by the Union to qualify as Journeymen with the Union. Construction Wiremen are apprentices registered with the state of Idaho, but have not completed the apprenticeship program through the Union's training program. CWs and CEs are electricians that can be hired pursuant to the CBA, but are non-union employees and are paid lower wages than either Journeymen electricians or Apprentices placed through the Union training program. Decl. of White ¶ 5 (Dkt. 14-10).

about a grievance filed by an employee who had been terminated from employment. Elletson Aff. ¶ 18 (Dkt. 15-2). Elletson did not receive any written confirmation of the grievances to be presented to the LMC, although written notice had occurred on prior occasions. *Id.* at ¶ 18. Elletson was not asked to provide information to NECA or the Union prior to the LMC meeting. *Id.* at ¶ 20.

The LMC met on December 10, 2012. Decl. of Bernsen ¶ 8 (Dkt. 14-4); *but see* Minutes (Dkt. 14-8).[2] Two grievances were addressed. Present at the meeting were four members representing Management, including Bernsen, and four members representing Labor, including Aaron White. The first grievance involved a wrongful termination claim brought by one of Alloway's employees. The second grievance concerned Alloway's violation of the ratio requirement under Article 5, Section 5.12 of the CBA. During the time the LMC meeting was held, Bernsen called Elletson to discuss issues relating to the wrongful termination grievance, and permitted Elletson to communicate Alloway's position on the matter. Elletson Aff. ¶ 22. Elletson was not asked to provide any information about the grievance regarding the ratios. *Id.*

After discussion, the LMC issued a determination that Alloway "adhere to the terms and conditions of the current Inside Wireman's Agreement and come into ratio as stated in Article 5 section 5.12. In the event Alloway does not come into ratio by December 13, 2012, all Construction Electricians (CE) must be paid the full wage and

---

[2] The meeting minutes are dated December 12, 2012, but the declaration of Mr. Bernsen, who was present at the meeting, indicates that the meeting occurred on December 10, 2012. Due to the timing of later phone calls and the contents of later correspondence, it appears the meeting occurred on December 10, and the meeting minutes contain a typographical error as to the date. The actual date of the LMC meeting is not material, however, for summary judgment purposes.

benefit package equal to an Inside Wireman,[3] commencing on December 13, 2012."
Bernsen was directed to prepare a letter notifying Alloway of the LMC's action.

Bernsen informed Elletson, by telephone, of the LMC's decision on December 11, 2012. Bernsen Decl. ¶ 9 (Dkt. 14-4 at 3); Elletson Aff. ¶ 23 (Dkt. 15-2). Bernsen again informed Elletson by letter dated December 14, 2012. Bernsen Decl. ¶ 9; Elletson Aff. ¶ 24. The December 14, 2012, letter addressed to Elletson informed Alloway that the LMC found Alloway in violation of Article 5, Section 5.12, and suggested various solutions to the issue, such as hiring additional Journeymen; laying off Construction Electricians; or paying the currently employed Construction Electricians the current wage and benefits of an Inside Wireman commencing December 13, 2012. The letter did not contain information about any penalty that would be assessed against Alloway, nor did it attach a copy of the minutes from the December 10, 2012, LMC meeting. (Dkt. 14-8 at 3.)

Aaron White states that Alloway did not return to ratio or pay the appropriate salary and benefits required by the LMC decision. White Decl. ¶ 13 (Dkt. 14-10). As a result, in "early January, 2013," White sent a letter to Elletson informing him that the LMC decision was final, but that Alloway could seek review at the Council on Industrial Relations.[4] This letter indicates that a copy of the minutes from the December 10, 2012, LMC meeting was attached. (Dkt. 14-14.) However, the copy of the letter Elletson received on January 16, 2013, did not include a copy of the December 10 LMC meeting

---

[3] The CBA contained a chart outlining the wages paid to CWs and CEs. For example, a Construction Wireman Step 1 was paid 30% of the Journeyman Wireman Rate. *See* Inside Wireman Agreement CW and CE Addendum (Dkt. 14-6 at 2-3).

[4] The undated January 2013 Letter is attached to White's Declaration as Exhibit D. (Dkt. 14-14.)

minutes. (Dkt. 15-4.) Elletson received a second undated letter on January 16, 2013, from Aaron White requesting copies of payroll records for the period December 13, 2012 through January 11, 2013, for all employees covered by the CBA and the Addendum. (Dkt. 15-4.) Elletson attempted to contact White to discuss the issue. *Id.* However, White did not return Elletson's phone calls. Elletson Aff. ¶ 36 (Dkt. 15-2 at 12.) Alloway did not seek review by the Council on Industrial Relation, and according to White, Alloway did not compensate the CE's/CW's as required by the LMC award. White Decl. ¶ 15 (Dkt. 14-10).

Article X, Section 4 of the Pension Fund Trust Agreement governs collection of delinquencies by the Pension Fund from participating employers. (Dkt. 14-16 at 3). The Trust Agreement states that, when a participating employer is delinquent, the Trustees "shall have the authority to take all reasonable steps necessary as appropriate to redress the delinquency…." If the Trust's administrative manager receives information indicating that a participating employer has failed to report employees, or hours, or any other reporting irregularity, the Administrative Manager may send a citation and require the employer to appear before the Trustees and present evidence relative to his fringe benefit accounts. (Dkt. 14-16 at 6; 14-16 at?).

Gus Sand, a principle of Gus Sand & Associates, an auditing and accounting firm, prepares audits for multi-employer pension and benefit funds, including the Eighth District Pension Fund, and has done so for 38 years. Decl. of Sand ¶ 2 (Dkt. 14-2). In July of 2013, Sand examined the books and payroll records of Alloway to determine the number of hours worked and gross wages paid to Alloway employees from December 13,

2012, to April 30, 2013. "Consistent with the LMC award, [Sand] reviewed Alloway's

payroll records and adjusted the salary and fringe benefit contributions Alloway reported,

and paid, for CW/CE's." *Id.* ¶ 5. Sand calculated the wages due CW/CE's for the period

December 13, 2012, through April 30, 2013,[5] to be $13,045.95. Sand further calculated

the contributions to the benefit fund based upon those wages to be $21,415.94; interest at

$2,043.20; and liquidated damages and audit fees of $5,148.94, bringing the total liability

to $42,819.91. *Id.* ¶¶ 6-10.

Alloway's Vice President, Miles Elletson, explained that Alloway has, at all times,

understood and complied with the CBA's ratio requirements for Journeymen and

apprentices. Alloway hires based upon its project needs. The number of employees it has

depends upon the number of contract projects Alloway has in progress, and journeymen

and CW/CE's are hired for specific projects. Elletson Aff. ¶ 7 (Dkt. 15-2). Elletson stated

that sometimes, a variance to the ratio requirement was granted pursuant to the CBA

Addendum. *Id.* ¶ 8. Elletson understood that the Union had the authority to allow

Alloway to deviate from the ratio so long as the Union business manager gave approval.

Alloway was granted such a variance as recently as October of 2012, for a particular job.

*Id.* ¶ 9. Alloway contends that the Union never asked for or examined documentation

from Alloway which would have demonstrated Alloway's ratio of journeymen to

CW/CE's on a jobsite specific basis, which is what Alloway contends the CBA requires.

*Id.* ¶¶ 11-15. Alloway blames its inability to comply with the jobsite specific ratios in

---

[5] Apparently, Alloway corrected its ratios by April 30, 2013. However, the record does not indicate who made that determination or what it was based upon.

2012 and February 2013 upon union electricians who quit without notice, walked off the job, or were the subject of termination for cause. *Id.* ¶¶ 15-17.

## ANALYSIS

The Union and the Pension Plan seek confirmation of the LMC award under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), contending that the arbitration award is enforceable. The Union argues Alloway did not move to vacate or modify the award within 90 days as required by Idaho Code § 7-911. Additionally, the Union claims it is entitled to enforcement of the award under a breach of contract theory, because Alloway breached the terms of the CBA by failing to maintain the required ratio, as determined by the LMC. As for the Pension Fund, the Union explains that the Funds have an independent statutory right under 29 U.S.C. § 1145 to enforce the contribution obligations imposed under a CBA, and also to collect contributions owed pursuant to an arbitration award.

In response and in support of its own motion, Alloway argues the LMC award is unenforceable under the Idaho Uniform Arbitration Act, because certain procedural requirements were not met, including a writing evidencing the award, mailed via registered mail to the employer. Alloway further argues that the LMC award was procured by undue means, and the process was conducted so as to prejudice Alloway's rights. As an example, Alloway notes that it was not given advance notice of the grievance, was not asked to provide testimony or evidence at the LMC meeting, nor was it notified promptly that it would be subjected to penalties if the situation was not corrected. Because the award was not properly delivered, Alloway argues the 90 day time

period to move to vacate the award never begun. Alloway relies upon the provisions of the Idaho Uniform Arbitration Act for its arguments.

Alloway asserts that the Sand Affidavit, upon which the LMC award depends, lacks foundation and does not identify how Sand calculated the ratios and amounts owed. Alloway contends that any award should take into account ratios of journeymen to CW/CE's by jobsite, and not on a shopwide basis. Because the Union has not presented evidence setting forth the ratios by jobsite, Alloway contends the LMC award is unenforceable under the terms of the CBA. Finally, Alloway argues the Union prevented Alloway's performance under the CBA, because union electricians walked off the jobsites without notice to Alloway, yet Alloway was obligated to finish its contracts with its customers regardless of its personnel issues.

In reply, the Union contends that, other than the 90 day period within which to vacate an award, Idaho law does not apply to this dispute. Rather, the Court must affirm the LMC award under the deferential standard of 29 U.S.C. § 185(a). In other words, the Court may not correct errors of fact or misinterpretation of the contract. The Union asserts appropriate notice under the CBA was given to NECA, Alloway's bargaining representative, and thus the 90 day period for contesting the award expired and Alloway is time-barred from challenging the decision. Finally, the Union contends that Alloway's defense of impossibility of performance is to no avail because interpretation of the CBA is a matter of ambiguity which the LMC, as the arbiter of the dispute, resolved and which the Court cannot review.

### 1.    Summary Judgment Standards

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence in a light most favorable to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the burden of showing that there is no material factual dispute, and the court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Celotex*, 477 U.S. at 324. Material facts which would preclude summary judgment are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The relevant substantive law will determine which facts are material for purposes of summary judgment. *Anderson*, 477 U.S. at 248. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id*. at 247–48.

When cross-motions for summary judgment are filed, the Court must independently search the record for issues of fact. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir.2001). The filing of cross-motions for summary judgment—where both parties essentially assert that there are no issues of material fact—does not vitiate the court's responsibility to determine whether disputed issues of material fact are present. *Id*.

## 2.    Labor Management Relations Act Standards

29 U.S.C. § 185 gives the Court jurisdiction to enforce agreements to arbitrate disputes under collective bargaining contracts between labor organizations and employers. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562-63 (1976). There is a strong policy favoring judicial enforcement of collective-bargaining contracts. *Hines*, 424 U.S. at 562.

Collective bargaining agreements commonly provide grievance procedures to settle disputes between the union and the employer concerning the interpretation and application of the agreement. *United Paperworkers v. Misco, Inc*, 484 U.S. 29, 36 (1987). The grievance procedure underlies the collective bargaining agreement, and arbitration is the preferred method to solve disputes arising under a collective bargaining agreement. *United Steelworkers v. Warrior & Gulf Navigation Co*., 363 U.S. 574, 581 (1960); *United Paperworkers*, 484 U.S. at 36.

The Court is not to undertake a review of the merits of an arbitration award, but should defer to the tribunal chosen by the parties under their agreement. *Hines*, 424 at 563. This is because final adjustment by a method agreed upon by the parties under the terms of their agreement is "declared to be the desirable method for settlement of grievance disputes." *Hines*, 424 at 562. So long as the arbitrator's award "draws its essence from the collective bargaining agreement, and is not merely his own brand of industrial justice, the award is legitimate." *United Paperworkers*, 484 U.S. at 36. Thus, the function of the Court is limited---it is not permitted to substitute its interpretation of

the contract for that of the arbitrator, and has no business weighing the merits of the grievance itself. *United Paperworkers*, 484 U.S. at 37.

Nor is the Court sitting in an appellate capacity when asked to review an arbitration award in the context of a collective bargaining dispute. *United Paperworkers*, 484 U.S. at 37. Rather, it is the arbitrator's view of the facts and the meaning of the contract that the parties agreed to accept, and the Court is not permitted to entertain claims of factual or legal error. *United Paperworkers*, 484 U.S. at 37-38. The Court may not reject an award on the ground that the arbitrator misread the contract. *Id.* at 38. Nor can the Court overturn the remedy even if it disagrees with the arbitrator's judgment. *Id.* So long as the arbitrator's award "draws its essence from the contract," the Court must enforce the decision even if the Court is convinced the arbitrator committed serious error. *Id. See also Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Hollywood Heating & Cooling, Inc.,* 1 Fed.Appx. 30, 33 (2d Cir. Jan.5, 2001) (court will uphold an award that it views as incorrect if that award merely has "a barely colorable justification" or is merely "plausibly grounded in the parties' contract.").

3.     **The Arbitration Award Is Final**

In this case, the CBA states that the LMC will decide and adjust any dispute that representatives of the employer and the Union cannot settle. Sections 1.05 through 1.08 of the CBA, to which Alloway signed an assent, set forth specific procedures to follow to resolve grievances between the parties. The CBA's dispute provisions are similar to dispute resolution provisions found enforceable in *Int'l Bhd. of Elec. Workers, Local Union No. 226 v. Wichita Elec. Co., Inc.*, No. 04-4028-JAR, 2005 WL 466206 (D. Kan.

Feb. 4, 2005). Proceedings before a labor management committee constitute final and binding arbitration, and labor management committees are authorized to issue arbitration awards entitled to judicial enforcement. *Wichita*, 2005 WL 466206 at *3.

Alloway first argues that it was not properly notified of the ratio grievance, nor given an opportunity to present testimony and evidence at the LMC meeting on its own behalf. However, there is no dispute that Alloway's designated bargaining representative, NECA representative Marc Bernsen, received notice on December 3, 2012, and was present at the LMC meeting on behalf of Alloway. The December 3 letter had attached Alloway's roster of journeymen to apprentices upon which the grievance relied. Bernsen notified Elletson of the December 10, 2012, meeting. Nothing in the Labor Management Relations Act or the CBA requires a representative of the employer to be present. Rather, so long as the "proper bargaining representative has been given the opportunity to be present at such adjustment," there is no procedural flaw. *ILWU Local 142 v. Land & Constr. Co., Inc.* 498 F.2d 201, 205 (9th Cir. 1974).

Alloway next cites Idaho's Uniform Arbitration Act as support for its argument that additional procedural irregularities existed to invalidate the award. But state law relating to arbitration awards is entirely preempted by federal law if the suit seeks to enforce a collective bargaining agreement. *See Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980) ("State law does not exist as an independent source of private rights to enforce collective bargaining contracts.") (citation omitted). *See also Wichita Electric Co., Inc.*, 2005 WL 466206 *4 (finding the Kansas Arbitration Act inapplicable

to the Union's action to enforce arbitration award). Alloway's arguments relying upon the Idaho Uniform Arbitration Act are unavailing.

Finally, Alloway contends that, because it never received a proper written confirmation of the award, the applicable statute of limitations period has not begun to run. Alloway attempts to avoid the rule that renders the award final if there is no challenge to the award within the applicable limitations period. *Sullivan v. Gilchrist*, 87 F.3d 867, 871 (7th Cir. 1996). If the relief sought is to nullify or otherwise attack the arbitration award, the only remedy is a timely suit to vacate. *Id.*

In Idaho, the Uniform Arbitration Act sets a 90-day limitations period for challenging an arbitration award. Idaho Code § 9-111; 9-112. This ninety day period imposed by Idaho law is appropriate to apply here. *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56 (1981) (affirming decision to apply 90-day period imposed by New York law for the brining of an action to vacate an arbitration award under Section 301 of the LMRA); *Bhd. of Teamsters Local 70 v. Celotex Corp*., 708 F.2d 488, 490 (9th Cir. 1983) (borrowing limitations period under California state law). Both parties agree that the 90 day limitations period of Idaho Code § 9-111 applies.

Alloway's bargaining representative, NECA's Marc Bernsen, received notice of the award. He communicated the LMC's findings to Elletson. Even assuming Elletson's version of events, Elletson received on January 16, 2013, a letter from White that, although not attaching the minutes from the December 10, 2012 LMC meeting, described the findings of the LMC. But Elletson received also a letter on December 14, 2012, informing Elletson of the outcome of deliberations on December 10, 2012. The letter

indicated that the LMC found Alloway in violation with Article 5, Section 5.12 of the CBA. Regardless of the form the notice came in, there is no dispute that Elletson knew the LMC had met; deliberated; and rendered a finding under the CBA. Yet Alloway never moved to vacate the award or otherwise seek clarification in writing from the Union. Failure to petition to vacate the award is fatal, and bars the party from asserting any affirmative defenses in a later proceeding to confirm the award. *Bhd. of Teamsters Local 70*, 708 F.2d at 490.

Turning now to the award, the Court finds that the LMC award is enforceable. The LMC found Alloway in violation of Section 5.12's ratio requirement, which required a specified number of journeymen to apprentices/CWs/CEs on each job site, and further explained that job sites include both the physical location where employees report for work, and also the employer's shop. It is not for the Court to determine how the LMC interpreted Section 5.12 and the evidence it considered.[6]

But, there is validity to Alloway's argument that the award is ambiguous. Alloway argues that the award does not identify in what way Alloway was out of ratio---on a per jobsite, or shop wide basis. Section 5.12 indicates that the "job site" is defined both as the physical location where the employees report for work, *and* the employer's shop, or service center. It is not clear from the LMC's determination what provision of Section 5.12 it found Alloway violated.

At the hearing, Plaintiffs clarified that the only ratio reviewed was the ratio of CW/CEs to Journeymen, shopwide, and that there was no jobsite analysis. However, this

---

[6] Presumably, the LMC interpreted also the impact of the Addendum upon Section 5.12.

conclusion is not evident from the language of the LMC award. The Award simply stated that Alloway was "out of ratio" as set forth in Article 5, Section 5.12 of the CBA. The Award did not differentiate whether the ratio was considered on a shopwide or per jobsite basis, which Section 5.12 clearly differentiated. Further, the Award in referencing Section 5.12 of the CBA does not appear to consider the effect of the Addendum upon Section 5.12 of the CBA, which incorporates a ratio of five journeymen to one apprentice (indentured) "shop wide," and "three journeymen to two apprentices, CW, CE." The LMC's award lacks clarity as to what ratio Alloway violated, and how it was violated. Further, the award has no end date, although by implication one could infer that, when the ratio was corrected, the penalty would end. But that proviso is not explicitly stated.

The lack of clarity renders the award ambiguous, but enforceable nonetheless.[7] *See Sheet Metal Workers Internat'l Assoc. Local Union #420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 745 (9th Cir. 1985) ("the mere fact that the decision underlying the award is ambiguous does not reduce the deference to which the award itself is entitled."). When the Court finds the meaning of an award to be uncertain, the Court in its discretion may remand the matter to the arbitrator. *San Francisco Elec. Contractors Assoc., Inc. v. Internat'l Bhd. Of Elec. Workers, Local No. 6*, 577 F.2d 529, 534 (9th Cir. Cir. 1978); *Automobile Mechanics Local 701, Internat'l Association of Machinists & Aerospace Workers, AFL–CIO, v. Joe Mitchell Buick, Inc.*, 930 F.2d 576, 578 (7th Cir. 1991). Because the Court is unable to determine what ratio was violated, and in what manner it

---

[7] The Union correctly asserts that the Court lacks the authority to construe the CBA. But it can construe the holding of the LMC, and if it finds the award ambiguous, the Court may remand the matter for further proceedings. *San Francisco Elect. Contractors Assoc., Inc.*, 577 F.2d 529, 534 (9th Cir. 1978).

was violated, the Court in its discretion will remand the matter to the LMC for clarification.

The Court declines to find, as Alloway suggests, that the LMC award was procured by undue means. The Court may review an erroneous arbitration decision and decline to declare it final if representation has been "dishonest, in bad faith, or discriminatory." *Hines*, 424 U.S. at 571. The bargaining representative must have fairly represented the employer in connection with the arbitration proceedings for the Court to enforce the finality provision when faced with an erroneous arbitration decision. *Hines*, 424 U.S. at 571. But Alloway has not presented evidence of dishonesty, bad faith, or discrimination. Although the Union could have done a better job in informing Alloway of the proceedings and their aftermath, Alloway was apprised of the process, and knew about the LMC award shortly after the December 10, 2012, meeting. Even considering Alloway's claims of procedural irregularity,[8] they do not rise to the level of dishonesty or bad faith that would necessitate vacating the award. *See Sheet Metal Workers*, 756 F.2d at 746 (mere appearance of impropriety, standing alone, is insufficient to overturn an award).The Court declines to so find.

**4.    Enforcement of the Arbitration Award by the Pension Fund**

The Pension Fund argues it is entitled to enforce the terms of the CBA as interpreted via the arbitration award, because it is a third party beneficiary of the CBA. The Pension Fund relies upon 29 U.S.C. § 1145, which states:

---

[8] The Court notes that Alloway was given only three days to comply with the award, an award which the Court finds ambiguous as explained above.

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

The Fund is a third party beneficiary of the CBA, and has an independent statutory right under ERISA, 29 U.S.C. § 1145, to enforce contribution obligations imposed on Alloway under the CBA. *Cent. States v. Sara Lee Bakery Group, Inc.*, 660 F.Supp.2d 900, 909 (N.D. Ill. 2009). *See also So. Cal. Retail Clerks Union and Food Emp'rs Joint Pension Trust Fund v. Bjorklund*, 728 F.2d 1262, 1265 (9th Cir. 1984) (trust funds occupied position as third party beneficiaries of the collective bargaining agreements).

In *Joe Mitchell Buick*, the appellate court held that the pension fund was entitled to enforce an arbitrator's award for "loss of earnings and benefits" for contributions due to the pension fund under the terms of the CBA. *Joe Mitchell Buick*, 930 F.2d at 578. Similar to this matter, the arbitrator's award in *Joe Mitchell* did not set forth the amounts due under the terms of the award. Rather, the arbitrator indicated the two employees were entitled to "be made whole by the Company for loss of earnings and benefits which resulted from their termination." *Id.* The arbitrator, however, permitted the Company and the Union thirty days to negotiate the basis for computing the award, and a mechanism to calculate the award if the negotiations failed. *Id.* Upon impasse, the pension fund made the required calculations, and brought suit to enforce the award according to its calculations. The court held that the arbitrator's award was not ambiguous, and the award entitled the employees to benefits including contributions to the pension fund provided in the CBA. *Id.*

Here, in contrast, the LMC provided no mechanism for calculating the award, nor any mechanism for Alloway to participate in providing evidence upon which the award could be calculated. The LMC does not designate the Pension Fund as the sole interpreter of how the award should be calculated, nor does the LMC designate Gus Sand as the appropriate individual to make the calculations. Finally, as Alloway argues, the CBA designates ratios in Section 5.12 by job site, and the employer's shop is considered to be a separate job site. The award makes no mention of how the ratio imbalance should be calculated so as to trigger the award.

The Court is further unsure of what Gus Sand relied upon---both in terms of the evidence he had of Alloway's employees, and the provisions of the Trust Agreement---that permitted him to calculate when Alloway was out of ratio; interest; liquidated damages; and audit fees. The LMC award makes no mention of interest, liquidated damages, and audit fees. Rather, all the award indicates is that Construction Electricians "must be paid the full wage and benefit package of an Inside Wireman." Other courts interpreting arbitration awards with a "make whole" provision or an award of wages and benefits have not interpreted such awards to include interest, liquidated damages, and audit fees, which may only be calculated under ERISA and the terms of the Trust Agreements. *See Joe Mitchell Buick*, 930 F.2d at 578 (construing award of "benefits" to comprise contributions to the Local 701 Pension Fund, but making no reference to liquidated damages, interest, or audit fees); *Central States, Southeast and Southwest Areas Pension Fund v. Sara Lee Bakery Group, Inc.*, 660 F.supp.2d 900, 909-10 (N.D.

Ill. 2009) (interpreting "make whole" award to include wages, benefits, and retirement contributions to the Fund on behalf of the employees).

The Pension Fund has not explained how, based upon the language of the LMC award, it is entitled to interest, liquidated damages, and audit fees. The award, by specifying only wages and benefits, is ambiguous in that regard, and does not appear to allow for the Pension Fund to enforce collection of those amounts under ERISA and the terms of the Trust Agreement, which the award does not incorporate. Again, remand is appropriate for clarification of this ambiguity.

**5.      Breach of Contract Claim and Defenses**

The Union alternatively brings its claim under a state law breach of contract theory, alleging Alloway breached the CBA by its failure to maintain the required ratio. In turn, Alloway contends that the Union prevented its performance under the CBA because union electricians were walking off of jobs.

The Union may not bring a state law breach of contract claim based upon violations of the CBA. *Wichita*, 2005 WL 466206 at *6. When resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, the claim must be addressed under Section 301 of the Labor Management Relations Act. *Allis-Chalmers Corp. v. Lueck*, 417 U.S. 202, 220 (1985). In other words, state causes of action whose existence depends upon an examination of the CBA to ascertain the duties of each of the parties and their scope are preempted by federal law. *Wichita*, 2005 WL 466206 at *6 (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 406 n.4 (1988)).

In this case, the Union sets forth the elements of a claim under state law, with reference to the provisions of the CBA. But whether Alloway breached the terms of the CBA by its failure to maintain required ratios of Journeymen to apprentices, CWs, or CEs, requires an examination of the specific provisions set forth in the CBA and any applicable addendum. Accordingly, federal law preempts Idaho law on the Union's breach of contract claim. The CBA's grievance procedure is the exclusive and final remedy for disputes arising under the CBA. *Wichita*, 2005 WL 455206 at *6.[9]

Similarly, Alloway may not raise an affirmative defense that it was prevented from performance and could not comply with the ratio requirement because union employees walked off the job.[10] Alloway was required to raise its defenses during the grievance procedure set forth in the CBA. *Wichita*, 2005 WL 455206 at *6. Further, Alloway was required to raise any challenges to the arbitrator's award within the ninety day period following the arbitrator's decision. It failed to do so. The Court therefore may not consider Alloway's affirmative defenses based upon breach of contract theories. *See Bhd. of Teamsters and Auto Truck Drivers Local No. 70*, 708 F.2d at 491 n.4 (party who failed to move to vacate an unfavorable award may not raise affirmative defenses in a later confirmation proceeding if those defenses could have been raised in a timely petition to vacate).

---

[9] Defendants explained at the hearing that they asserted a breach of contract claim "under ERISA." However, such a theory is improper. To bring a breach of contract claim, Defendants must assert that the CBA and the Trust Agreement provide an independent basis for Alloway's contribution obligation. *See Sara Lee*, 660 F.Supp.2d at 913-14 (finding the Fund asserted an independent claim for breach of contract based upon the CBA). Here, in contrast, the Fund is relying solely upon the LMC award as a basis for its breach of contract claim. Under those circumstances, the breach of contract claim does not arise independent of the LMC award, and is preempted.

[10] The Court notes that, by raising this defense, Alloway implicitly admits it did not comply with the CBA's ratio requirement.

## CONCLUSION

Although the Court finds the award enforceable, it cannot be enforced in its current form. The award is ambiguous, both in terms of what provision of Section 5.12 it relies upon for its conclusion that Alloway was noncompliant with the ratio provision, and in terms of how to calculate the award. Further, the LMC decision provided no mechanism for Alloway to participate in further proceedings to ensure a fair and accurate award calculation. The Court will remand this matter to the LMC for further proceedings consistent with this opinion.

# ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiffs' Motion for Summary Judgment (Dkt. 14) is **GRANTED IN PART AND DENIED IN PART**.

2) Defendant's Motion for Summary Judgment (Dkt. 16) is **GRANTED IN PART AND DENIED IN PART**.

3) This matter is hereby **REMANDED** to the Labor Management Committee of the International Brotherhood of Electrical Workers, Local 291, for further proceedings consistent with the Court's opinion.

4) The Clerk is directed to close this case.

Dated: **July 22, 2014**

Honorable Candy W. Dale
United States Magistrate Judge